IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES HELFRICH and GERALD PAULE, | ) ) ) |
| Plaintiffs, | ) ) ) Case No. 3:20-CV-935-MAB |
| vs. | ) ) |
| STONEBRIDGE CONSTRUCTION AND ROOFING, | ) ) ) |
| Defendant. | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motion to dismiss filed by Defendant Stonebridge Construction and Roofing (Doc. 6). For the reasons explained below, the motion is granted as Count 2 and denied as to Count 1.

### BACKGROUND

Plaintiff James Helfrich filed a two-count complaint against Defendant Stonebridge Construction and Roofing on August 13, 2020 in the Circuit Court of St. Clair County, Illinois for allegedly faulty repairs done to the roof of an historic mill in Millstadt, Illinois that Helfrich owned (Doc. 3-1). On September 9, 2020, Helfrich moved to amend his complaint to add Gerald Paule, the former owner of the mill, as a plaintiff (Doc. 3-2). The motion was granted the next day (Doc. 3-3). However, Helfrich never actually filed the amended complaint before Stonebridge removed the case to federal court on September 14, 2020 (Doc. 1). Later that same day, Stonebridge filed an amended notice of

removal, which identified both Helfrich and Paule as the Plaintiffs in the case (Doc. 3).

Stonebridge filed its motion to dismiss on September 21, 2020 (Doc. 6). Helfrich and Paule's attorney twice requested, and was given, an extension of time to respond to the motion to dismiss (Docs. 13, 20). But before he ever filed the response, the attorney moved to withdraw because Helfrich and Paule had retained new counsel (Doc. 22). On December 15, 2020, the Court granted the motion to withdraw and gave Helfrich and Paule an additional 45 days to respond to the motion to dismiss (Doc. 26). Their new attorney entered his appearance and filed their response in opposition to the motion to dismiss on January 28, 2021 (Docs. 27, 29). He disputed Defendant's arguments but also stated that he was going to seek leave to amend the complaint in order to plead "Helfrich's various causes of action correctly and completely" (Doc. 29, p. 6). In the ensuing months, however, counsel never filed a motion for leave to amend. At a status conference on April 7, 2021, Helfrich and Paule's counsel once again reiterated his intent to amend the complaint to clarify the allegations and legal theories (*see* Doc. 33, Doc. 36). Later that day, however, their attorney moved to withdraw because they had chosen to seek new counsel (Doc. 32; *see also* Doc. 36). At a hearing on April 21, 2021, the undersigned granted the motion to withdraw and told Helfrich and Paule that their new attorney had seven days to enter his appearance and fourteen days to file a motion to amend (minute entry dated April 21, 2021). The new attorney entered his appearance, (Doc. 40), but did not file a motion to amend.

#### DISCUSSION

**A. OPERATIVE COMPLAINT**

As an initial matter, the Court must decide what the operative complaint is. Although Helfrich attached his proposed amended complaint to his motion for leave to amend, which the state court granted, he never independently filed the amended complaint in state court. Following removal, the undersigned gave Helfrich more than one opportunity to file an amended complaint, but he never did so (*see* Doc. 33; Doc. 36; minute entry dated April 21, 2021). Given Helfrich's conscious decision not to file the amended complaint, it does not make sense to nevertheless construe the proposed amended complaint as the operative complaint in this matter. Therefore, the original complaint is deemed the operative complaint. Gerald Paule, who was not named as a plaintiff in the operative complaint, is hereby dismissed without prejudice.

**B. MOTION TO DISMISS**

A motion to dismiss under Rule 12(b)(6) addresses the legal sufficiency of the plaintiff's claim for relief, not the merits of the case or whether the plaintiff will ultimately prevail. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss, the court accepts all well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor. *E.g.*, *Burger v. Cty. of Macon*, 942 F.3d 372, 374 (7th Cir. 2019) (citation omitted). The complaint must contain sufficient factual information "to state a claim to relief that is plausible on its face,'" meaning the court can reasonably infer that the defendant is liable for the alleged misconduct. *Burger*, 942 F.3d at 374 (*quoting Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009)); *Camasta*, 761 F.3d at 736 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

## Allegations in the Complaint

It is alleged that on July 10, 2017, James Helfrich agreed to purchase the mill from Gerald Paule. Six days later, the roof of the mill sustained damage from wind and weather. Helfrich and Paule had not yet closed on the sale of the mill, so Paule opened a claim for damage to the roof with Country Companies Insurance. A claims specialist came up with an estimate of $3,391 to fix the damage. At the closing on August 10, 2017, Paule assigned all interests in the mill, including the insurance claim, to Helfrich.

After Helfrich closed on the purchase, he contacted several roofing companies. All but one told him the job was too big and the estimate did not fully account for all of the work needed to fix the damage. The only company that agreed to do the job was Defendant Stonebridge. Stonebridge worked with the insurance company to increase the estimate to $21,336. Stonebridge drafted a contract, specifying the scope of the work to be completed and indicating that payment of $21,336 would come from the insurance proceeds on the claim opened by Paule (which was later assigned to Helfrich) (Doc. 3-1, pp. 34–37). Stonebridge mistakenly indicated on the contract that Paule was the owner of the mill (*see id.*).

In March 2018, representatives from Stonebridge met with Helfrich to go over the written bid in detail. Stonebridge was paid approximately $9,000 to begin work. Stonebridge completed the job sometime in May 2018 and the insurance company cut Stonebridge a check for the balance of the $21,336 estimate. Several weeks later, the roof

of the Mill started leaking where the repairs were allegedly completed. Helfrich contacted Stonebridge and Stonebridge sent an agent to the mill to work on the roof. After working for a few hours, the agent told Helfrich the repairs were complete. However, more leaks materialized in the weeks that followed. Helfrich contacted Stonebridge numerous times during the summer and fall of 2018 to complain about the leaks, but Stonebridge never returned the calls.

In December 2018, rain caused electrical service at the mill to short out and the utility service provider had to disconnect power to the mill. Helfrich was forced to stop milling and mixing operations, which were the mainstay of his business. He also could no longer store products in the building because of water damage and crumbling walls.

In March 2019, after several months of unreturned calls and text messages to Stonebridge, Helfrich contacted the insurance agent who previously handled the claim. The insurance agent said he would contact Stonebridge to discuss the damage and to tell them to "make it right." Before any further repairs were attempted, the roof of the mill collapsed in April 2019. Stonebridge agents subsequently met with Plaintiff and his contractor to look at the damage. Plaintiff's contractor stated that the entire job was done improperly and had caused stress on the structure of the building and more damage than the original leaks (Doc. 3-1, pp. 13–16). He estimated that it would cost $31,900 to fix the roof and $61,750 to fix the electrical issues (*Id.*). A second company estimated that it would cost tens of thousands of dollars to fix the deteriorating masonry walls and stabilize the structure (*see* Doc. 3-1, pp. 17–33).

1. **Count 1 – Breach of Contract**

In Count 1, Helfrich alleges a claim for breach of contract (Doc. 3-1). Specifically, he alleges Stonebridge was contracted to fix the damaged roof of the mill and breached its promises that all work would be performed in a workmanlike fashion and consistent with applicable building code and standards (*Id.*). Stonebridge argues that Count 1 must be dismissed because Helfrich was not a party to the contract (Doc. 6, pp. 2–3). Stonebridge claims that the contract was between it and Gerald Paule. Stonebridge further claims that Helfrich failed to allege that Paule assigned the contract to him (*Id.*).

The Court questions whether Stonebridge and Paule were the actual parties to the contract, as Stonebridge asserts. Helfrich is the one who contacted Stonebridge about fixing the mill's roof in the first place. Helfrich is the one who met with Stonebridge agents to discuss the details of Stonebridge's written bid. He is the one who stayed in touch with the insurance agent regarding the status of the claim. At the time Stonebridge drafted the contract in March 2018, Helfrich was the owner of the mill and the insurance claim initiated by Paule had been assigned to him. Furthermore, the contract explicitly stated that "the insurance money" was going to pay for the repairs (Doc. 1-2, p. 33). It appears Paule's only connection to the contract is that Stonebridge mistakenly listed his name as the owner of the property. Helfrich did not make this argument, however, and he accepted Stonebridge's assertion that the contract was between Stonebridge and Paule (*see* Doc. 29). The Court will likewise make the same assumption for purposes of this Order.

It is well-settled in Illinois that "if a contract is entered into for the direct benefit of

a third person who is not a party to the contract, that person may sue on the contract as a third-party beneficiary." *City Of Yorkville v. Am. S. Ins. Co.*, 654 F.3d 713, 716 (7th Cir. 2011) (citing *Carson Pirie Scott & Co. v. Parrett,* 178 N.E. 498, 501 (Ill. 1931)). "If the intent to benefit others is not explicitly provided for in the contract, 'its implication at least 'must be so strong as to be practically an express declaration.'" *City of Yorkville*, 654 F.3d at 716 (quoting *Barney v. Unity Paving, Inc.,* 639 N.E.2d 592, 596 (1994)). "The parties' intent is to be gleaned from a consideration of all of the contract and the circumstances surrounding the parties at the time of its execution." *City of Yorkville*, 654 F.3d at 716.

Here, assuming that the contract was between Stonebridge and Paule, the circumstances surrounding the parties and the contract, which were laid out two paragraphs above, make clear beyond question that the contract was entered into for the benefit of James Helfrich as the current owner of the mill.

### 2. Count 2 – Consumer Fraud

In Count 2, Helfrich alleges that Stonebridge engaged in a deceptive act or practice when it represented that the materials it used for the repairs were installed in a workmanlike manner and that it would follow in good faith the description of work it wrote up (Doc. 3-1). Helfrich further alleges that Stonebridge intended for him to rely on the deceptions and that the deceptions were the proximate cause of actual damages he suffered (*Id.*).

Stonebridge argues that Count 2 must be dismissed because Helfrich is simply alleging that Stonebridge promised something and then failed to do it, and those allegations, standing alone, do not amount to a claim under the Illinois Consumer Fraud

Act (Doc. 6, pp. 3–5). Stonebridge further argues that the claim must fail because the representations the claim is based on were made after the date of the contract (*Id.*).

In his response, Helfrich does not dispute the deficiencies noted by Stonebridge and instead simply asks the Court to give him leave to amend his complaint (Doc. 29). As previously noted, however, Helfrich never filed a motion for leave to amend his complaint. The Court agrees with Stonebridge that Helfrich's consumer fraud claim as stated in the operative complaint must be dismissed. The claim is based on failure to fulfill the express and implied promises in the contract (*see* Doc. 3-1), but "[a] breach of contractual promise, without more, is not actionable under the Consumer Fraud Act." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 2005). Count 2 is therefore dismissed without prejudice.

## Conclusion

Defendant Stonebridge Construction and Roofing's motion to dismiss (Doc. 6) is **GRANTED IN PART and DENIED IN PART**. It is denied as to Count 1 and granted as to Count 2. Count 2 is **DISMISSED without prejudice**. Additionally, Gerald Paule is **DISMISSED without prejudice** as a plaintiff in this matter.

James Helfrich will proceed in this matter against Defendant on Count 1 for breach of contract.

IT IS SO ORDERED.

DATED: June 15, 2021

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**